IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                          |   |                              |
|--------------------------|---|------------------------------|
| TAJU SHERIF,             | * |                              |
|     Plaintiff,           | * |                              |
|     v.                   | * | CIVIL NO.: WDQ-14-2679       |
|                          | * |                              |
| UNIVERSITY OF MARYLAND   | * |                              |
| MEDICAL CENTER,          | * |                              |
|     Defendant.           | * |                              |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Taju Sherif sued the University of Maryland Medical Center ("UMMC") for employment discrimination in violation of the Family and Medical Leave Act of 1993 ("FMLA").[1]  ECF Nos. 1, 15.[2] Pending is UMMC's motion to dismiss, or alternatively, for summary judgment.  ECF No. 4.  No hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For the following reasons, UMMC's motion, construed as one for summary judgment, will be granted.

---

[1] 29 U.S.C. §§ 2601 *et seq.* (2012).

[2] On July 21, 2015, Sherif refiled his complaint, which had been missing a page. *See* ECF No. 15.

I.   Background[3]

On June 20, 2011, UMMC hired Sherif as a Medical

Technologist in the UMMC Laboratories of Pathology ("Path Lab").

ECF Nos. 4-3; 11-2 ¶ 1.   Sherif was supervised by Jennifer

Christophi and Nancy Pabst.   ECF Nos. 4-6 ¶ 2; 4-8 ¶ 2.   David

Hornbeck--Path Lab Associate Director--supervised Christophi and

Pabst.   *See, e.g.*, ECF No. 4-6 ¶ 2.   Neddra King served as the

Path Lab's Human Resources Business Partner, and Ryan Lucken as

UMMC Human Resources Recruitment Specialist.   ECF Nos. 4-7 ¶ 2;

4-9 ¶ 2.

On January 10, 2014, Sherif received approval for a 20 day

vacation--from February 26 to March 24, 2014--for a trip to

Ethiopia.   ECF No. 4-14; *see also* ECF No. 11-2 ¶ 4.   On about

March 23, 2014, Sherif apparently contracted malaria.[4]   ECF No.

---

[3] The facts are from exhibits attached to UMMC's motion, ECF No.
4, Sherif's response, ECF No. 11, and UMMC's reply, ECF No. 14.
In reviewing a motion for summary judgment, the nonmovant's
evidence "is to be believed, and all justifiable inferences are
to be drawn in his favor."   *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

[4] Sherif attached a doctor's note as an exhibit to his
opposition, stating that he had been treated for malaria.   ECF
No. 11-2 at 10.   However, the doctor's note has not been
authenticated by, for example, an affidavit.   *See id.*   Because
the unauthenticated note would be inadmissible at trial, the
Court is unable to consider it in resolving UMMC's motion.   *See
Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508,
515 (D. Md. 2008)(refusing to consider unauthenticated medical
documents in resolving a summary judgment motion); Fed. R. Civ.
P. 56(c)(2).

11-2 ¶ 6.   On March 24, 2014, Sherif visited a clinic in his village for treatment; it referred him to a larger clinic, "Ethio Tebib."   *Id.* ¶ 8.

The parties dispute the number of times Sherif contacted Christophi about his illness.   Sherif avers that he contacted Christophi on March 25, 2014 and told her "of [his] situation and that [he] was unable to return to the United States until [he] recovered."   ECF No. 11-2 ¶ 9.[5]   Sherif further avers that he called Christophi on March 26, 2014 and told her he was being tested for malaria.   *Id.*   Christophi avers that, on March 25, 2014, the day he had been due back at work, Sherif called her and told her that he was still in Ethiopia, sick, and unable to return.   ECF No. 4-6 ¶ 5.   During that same call, Sherif further stated that he thought he had malaria, was about to be seen by a doctor, and would call the next day to provide an update.   *Id.*   Christophi avers that Sherif did not call her on March 26, 2014.   *Id.* ¶ 6.   On March 27 or 28, 2014, Sherif called Christophi using the same long distance telephone number he had used on March 25, but the call was dropped.   *Id.* ¶ 6; ECF No. 11-2 ¶ 13.

---

[5] It is unclear what Sherif means by his "situation," *i.e.*, what he told Christophi.   However, it is reasonable to infer that Sherif's "situation" consisted of his "extreme pain, high fever, chills, nausea[,] and frequent vomiting," and his treatment in his village and referral to a larger clinic, which he avers in the immediately preceding paragraphs.   See ECF No. 11-2 ¶¶ 7-9; *Anderson*, 477 U.S. at 255.

Christophi tried to call Sherif on that same number, but the call did not connect;[6] attempts to reach Sherif at his home and cellular telephone numbers were unsuccessful.  ECF No. 4-6 ¶ 6. On March 29, 2014, Sherif lost his cellular telephone.  ECF No. 11-2 ¶ 15.  Because of the remote location of his parents' home in Ethiopia, Sherif was unable to access the internet or make international telephone calls.  *Id.* ¶ 16.

On April 2, 3, 4, and 14, 2014, Christophi emailed Sherif at his UMMC email address asking when he would return to work. ECF Nos. 4-15, 4-16, 4-17, 4-18.[7]  Sherif had been unable to access his work email address while in Ethiopia.  ECF No. 11-2 ¶ 20.  On April 3, 2014, UMMC mailed FMLA paperwork[8] to Sherif at

---

[6] Sherif could only make calls, not receive them, on the cellular phone he used in Ethiopia.  ECF No. 11-2 ¶ 14.

[7] Sherif was responsible for maintaining current contact information, including an emergency contact name and telephone number, through "Lawson," UMMC's Human Resources interface.  ECF No. 4-7 ¶ 4.  According to UMMC, Sherif did not provide a personal email address through Lawson.  ECF No. 4-6 ¶ 7.  Sherif avers that he updated his  contact information to include a new telephone number, his sister's telephone number, and his personal email address.  ECF No. 11-2 ¶ 5.  The Lawson contact information printout submitted by UMMC reflects Sherif's home address; however, the single page provided does not have a field for email address.  *See id.*  A "Personal" tab appears at the top of the printed page; however, that page has not been provided to the Court.  *See id.*

[8] UMMC's FMLA Policy provides that each employee "is responsible for notifying his or her Manager/Supervisor of the need for a family or medical leave.  ECF No. 4-11 at ¶ II.A.  When leave is foreseeable, the employee "must provide notice 30 days prior to [the] date that leave is scheduled to commence."  *Id.*  When

his home address.   ECF Nos. 4-7 ¶ 6; 14-1 ¶ 3; 14-2.   The

paperwork was not returned as undeliverable.   ECF No. 4-7 ¶ 6.

According to Sherif, he never received the FMLA paperwork

"during [his] absence."   ECF No. 11-2 ¶ 19.

On April 15, 2014, UMMC mailed Sherif a certified letter

informing him that his "employment . . . may be in jeopardy due

to [his] manager's inability to contact [him] regarding [his]

schedule."   ECF No. 4-19.   It noted Christophi's four attempts

to contact him by email, and that it had "not received any

communication from [Sherif] regarding [his] schedule, or [his]

intent to return to work."   *Id.*   The letter informed Sherif that

he had "failed to follow established departmental policy and

procedure for informing [his] department of [his] availability,"

and that he must contact King or Christophi by 5:00 p.m. on

---

leave is unforeseeable, the employee must provide notice "as
soon as practicable, typically the same day or next business day
after learning of the need for leave."   *Id.*   Additionally,
"[t]he employee is responsible for completing all necessary
paperwork, including the FMLA application and certification
form, within the applicable timeframes."   *Id.* ¶ II.B.   An
employee who has been approved for FMLA leave for his or her own
serious health condition "must provide a statement from his/her
attending physician that certifies his/her fitness to return to
full duty and be cleared by Employee Health Services before
returning to work."   *Id.* ¶ IV.F.1.   "An employee who is approved
for FML[A] and is able to return to work at the conclusion of
the allotted time period (12 weeks) will be restored to their
[previous job]."   *Id.* ¶ IV.G.1.

April 25, 2014, "or this will be considered your resignation."
*Id.*[9]

On April 16, 17, and 21, 2014, Pabst tried to contact
Sherif using his emergency contact telephone number, but no one
answered.  ECF No. 4-8 ¶ 6.  Pabst checked the employee
telephone number listed in the Path Lab, but it was the same as
Sherif's emergency contact telephone number.  *Id.*  Pabst also
checked with Sherif's co-workers to see if anyone had heard from
him, but no one had.  *Id.* ¶ 8.  On April 28, 2014, UMMC
terminated Sherif's employment, deeming it "a voluntary
resignation."  ECF No. 4-21.

Sherif had recovered from his illness by the end of April
and planned to leave Ethiopia on April 30, 2014; however,
"violent demonstrations" prevented him from leaving.  ECF No. 11

---

[9] UMMC's Attendance and Punctuality Policy stated that
"[e]mployees may be required to provide evidence of their own
illness if it extends over [three] days based upon manager
request or as outlined in the employee's departmental policy."
ECF No. 4-12 ¶ 5.2.  Under the Path Lab's Proof of Illness
Policy, "at any point in time, a supervisor may request that an
employee provide documentation of an absence."  ECF No. 4-13 at
5.  The Path Lab's Certification of Illness or Injury Policy
requires employees to "[s]ubmit a certification authenticating
the period of illness or injury . . . for an absence of more
than [two] consecutive working days."  *Id.* at 6.  "When an
employee is excessively absent from . . . work, the employee may
be subject to corrective action . . . unless the absence is due
to a serious medical condition . . . under the guidelines of the
[FMLA] Policy."  ECF No. 4-12 ¶ 5.2.

¶ 21.[10]   On May 5, 2014, Sherif obtained a doctor's note stating that he had been treated for malaria from March 26, 2014 to May 5, 2014.  *Id.* ¶ 23.

On May 3, 2014, UMMC advertised an opening for Sherif's position.  ECF No. 4-9 ¶ 3.  UMMC typically posts an opening for at least one week and reviews all applications received that week.  *Id.* ¶¶ 3-4.[11]  In this case, Lucken sent Hornbeck, the hiring manager for Sherif's position, about six applications. *Id.* ¶ 3.  Hornbeck told Lucken that he planned to interview several candidates; thus, Lucken decided that he did not need to send Hornbeck additional applications.  *Id.* ¶ 5.  On May 7, 2014, after a previous unsuccessful attempt, King's April 15, 2014 letter was delivered to Sherif's home.  ECF Nos. 4-7 ¶ 7.[12]

---

[10] Demonstrations against the government led the "Agazi Federal Armed Forces" to seize the town.  ECF No. 11-2 ¶ 22.

[11] An offer may be extended on the eighth day if there is a qualified candidate.  ECF No. 4-9 ¶ 4.

[12] Sherif makes contradictory remarks about the delivery of the April 15 letter.  He avers that the April 15, 2014 letter had been "returned to sender" and that he had been unaware of the letter until he went to UMMC upon his return.  ECF No. 11-2 ¶ 17.  However, he also states that UMMC "knew that the letter was not delivered until May 7, 2014."  ECF No. 11 at 9.  A photocopy of the outside of an envelope mailed to Sherif by UMMC on April 15, 2014 shows that--on May 5, 2014--it had been marked "return to sender," "unclaimed," and "unable to forward."  ECF No. 11-2 at 8.  USPS tracking information submitted by UMMC shows that, as of May 2, 2014, the letter was "unclaimed"; however, on May 7, 2014, the letter left the USPS facility and was delivered. ECF No. 4-20.

On May 12, 2014, Sherif returned to the United States.  ECF
No. 11-2 ¶ 24.  On May 13 or 14, 2014, Sherif called Christophi
and told her that he was back and wanted to return to work.  ECF
No. 4-6 ¶ 9.  Christophi told him to contact Human Resources.
*Id.*; ECF No. 11-2 ¶ 25.

On May 15, 2014, Sherif went to UMMC and spoke with King.
ECF No. 4-7 ¶ 8.  King told Sherif that his employment had been
terminated because he had failed to communicate with UMMC about
his status.  *Id.*  Sherif told her that he had been sick with
malaria.  ECF No. 11-2 ¶ 26.  According to King, she asked him
why he had not contacted UMMC, and whether he had completed FMLA
paperwork or had documents showing that he had been treated by a
doctor in Ethiopia; Sherif did not respond or provide her with
any documents.  ECF No. 4-7 ¶ 8.  According to Sherif, "[a]t no
point did [King] or anyone else ask that I fill out FMLA papers
or provide medical certification or advise him of the
consequences of [his] failure to do so."  ECF No. 11-2 ¶ 29.
King told Sherif that the termination was not appealable.  ECF
No. 11-2 ¶ 27.  That day, Sherif also told Christophi and Pabst
that he had been sick and out of the country, but did not
explain why he had not contacted UMMC, and did not provide
documentation about his illness or FMLA paperwork.  ECF Nos. 4-6
¶ 10; 4-8 ¶ 10.

Also on May 15, 2014, Sherif applied for his former job. ECF No. 4-9 ¶ 6.   Lucken did not send Hornbeck Sherif's application because he knew that Hornbeck had other candidates he was considering.   *Id*.   Lucken had been unaware of Sherif's absence or termination when he received his application, which stated that Sherif was employed by UMMC.   *Id*.[13]   On May 16, 2014, Sherif told Hornbeck that he had reapplied for his position; however, Hornbeck told him "there was 'no point to talk about it.'"   ECF No. 11-2 ¶ 32.   On May 23, 2014, UMMC offered the position to a candidate who had applied during the first week the position had been posted; on May 27, 2014, that candidate accepted.   ECF No. 4-9 ¶¶ 5-6.

On August 20, 2014, Sherif sued UMMC for FMLA violations. ECF No. 1.[14]   On October 27, 2014, UMMC moved to dismiss or for summary judgment.   ECF No. 4.   On November 25, 2014, Sherif opposed the motion.   ECF No. 11.   On December 19, 2014, UMMC replied.   ECF No. 14.

---

[13] Lucken had been confused about why Sherif had applied for the position he held, but assumed that Sherif had "mistakenly appl[ied] for the wrong transfer position."   ECF No. 4-9 ¶ 6.

[14] *See also* ECF No. 15 (complaint including missing page).

II.   Analysis

      A.   Legal Standard

      UMMC's motion is captioned as a motion to dismiss under
Rule 12(b)(6)[15] or, in the alternative, for summary judgment
under Rule 56.[16]  A motion with this caption implicates the
Court's discretion under Rule 12(d)[17] of the Federal Rules of
Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v.
Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

      Ordinarily, the Court "is not to consider matters outside
the pleadings or resolve factual disputes when ruling on a
motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450
(4th Cir. 2007).  However, under Rule 12(d), the Court, in its
discretion, may consider matters outside the pleadings; if the
Court does so, "the motion must be treated as one for summary
judgment under Rule 56," and "[a]ll parties must be given a
reasonable opportunity to present all the material that is
pertinent to the motion."  Fed. R. Civ. P. 12(d).[18]  When the

---

[15] Fed. R. Civ. P. 12(b)(6).

[16] Fed. R. Civ. P. 56.

[17] Fed. R. Civ. P. 12(d).

[18] A district judge has "complete discretion to determine whether
or not to accept the submission of any material beyond the
pleadings that is offered in conjunction with a Rule 12(b)(6)
motion and rely on it, thereby converting the motion, or to
reject it or simply not consider it." 5 C Wright & Miller,
Federal Practice and Procedure § 1366, at 159 (3d ed. 2004, 2011

movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Sherif has had more than adequate notice that UMMC's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260–61. Moreover, Sherif responded to the motion as if it might be treated as one for summary judgment and included his own affidavit and other exhibits. See ECF No. 11-2. Sherif has also had adequate time to seek discovery. If he had thought that further discovery was necessary to adequately oppose summary judgment, Rule 56(f) obligated him to state reasons for his need in an affidavit. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 & n.6 (1986); *see also* Fed. R. Civ. P. 56(f); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on

---

Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56(f)).  He has not done so.  Therefore, the Court will consider the affidavits and additional materials submitted by the parties and will treat UMMC's motion as a motion for summary judgment.

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);[19] *Celotex Corp.*, 477 U.S. at 322.  In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to

---

[19] Federal Rule of Civil Procedure 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).   The opposing party must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp.*, 477 U.S. at 322-23.   The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

    B.   UMMC's Motion

    Under the FMLA, eligible employees are entitled to 12 weeks of leave during a 12-month period for covered reasons, including a serious health condition.   29 U.S.C. § 2612(a)(1)(D). Employers may not (1) "interfere with, restrain, or deny the exercise of" the right to that leave, or (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."   29 U.S.C. § 2615(a).   A claim based on the first prohibition is an interference claim; one based on discrimination is considered a retaliation claim.   *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006).   "A retaliation claim under the FMLA differs from an interference claim under the FMLA in that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent."   *Bosse*

13

*v. Balt. Cnty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010). Sherif alleges both types of claims; UMMC contends they both must fail.

      1.   Interference

To establish unlawful interference with an entitlement to FMLA benefits, Sherif must prove that: "(1) []he was an eligible employee; (2) [his] employer was covered by the statute; (3) []he was entitled to leave under the FMLA; (4) []he gave [his] employer adequate notice of [his] intention to take leave; and (5) the employer denied [him] FMLA benefits to which []he was entitled." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 495 (D. Md. 2013)(*quoting Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008)).[20] Sherif must also show "that the violation prejudiced [him] in some way." *Id.* (*quoting Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 197-98 (4th Cir. 2013), *as amended* (May 3, 2013)). UMMC contends that Sherif has not shown that (1) he adequately notified UMMC of his intent to take leave, (2) he was entitled to take leave, and, thus, (3) that UMMC denied him benefits to which he had been entitled. ECF No. 4-1 at 20. Sherif contends

---

[20] In addition to denying FMLA benefits, interference may include "'refusing to authorize FMLA leave'"; "'discouraging an employee from using such leave'"; "'avoid[ing] responsibilities under FMLA'"; and "'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.'" *Bosse*, 692 F. Supp. 2d at 585 (*quoting* 29 C.F.R. § 825.220(b), (c)).

that "[t]he only issue here is whether [he] provided adequate notice," and his March 26, 2014 telephone call to Christophi provided adequate notice.  ECF No. 11 at 11-12.

Employees must provide notice to their employer when they require FMLA leave.  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 382-83 (4th Cir. 2001).  When--as here--the need for leave is unforeseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(b).[21]  Although the regulations provide that notice "may include the anticipated duration of the absence[,] if known," the Fourth Circuit has stated, in the context of unforeseeable leave, that employers "are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work."  *Peeples v. Coastal Office Products, Inc.*, 64 F. App'x 860, 863 (4th Cir. 2003)(*quoting Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001)); *see also Lewis v. Holsum of Fort Wayne, Inc.*,

---

[21] *See also Koszarsky v. A.O. Smith Corp.*, No. 4:12-CV-00939-RBH, 2014 WL 108320, at *7-*8 (D.S.C. Jan. 9, 2014)(genuine issue of fact regarding adequacy of notice when plaintiff requested two days' leave because of stress, employer knew about plaintiff's mental health issues, plaintiff's wife told employer that he had an anxiety attack after being fired, and plaintiff submitted FMLA and medical certification forms).

278 F.3d 706, 710 (7th Cir. 2002)("[T]he FMLA does not authorize employees on leave to keep their employers in the dark about when they will return.")(internal quotation marks and citation omitted).[22]  The employee "need not expressly assert rights under the FMLA or even mention the FMLA"; however, "[c]alling in 'sick' without providing more information will not be considered sufficient notice."  *Id.*

Upon receiving oral notice, employers are expected to obtain "additional required information through informal means," and employees are required "to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying."  29 C.F.R. § 825.303(b); *Brushwood v. Wachovia Bank, N.A.*, 520 F. App'x 154, 157 (4th Cir. 2013) (once an employee has provided "threshold" oral notice, the employer should "inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave")(*quoting* Rhoads, 257 F.3d at 383); *Rodriguez*, 545 F. Supp. 2d at 519.  "Because the FMLA was designed to balance the demands of the workplace with the needs of families, employers and employees are encouraged to communicate with each other."

---

[22] *See also Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 653 (D. Md. 2013) ("[T]he 'substance and other particulars of [a § 303(b) notice] must conform to § 825.302 (relating to notice of a need for leave that is foreseeable), and only the timing of its delivery is affected by § 825.303.'")(*quoting Peeples v. Coastal Office Products, Inc.*, 203 F. Supp. 2d 432, 448-49 (D. Md. 2002) *aff'd*, 64 F. App'x 860 (4th Cir. 2003)).

*Peeples*, 64 F. App'x at 863 (internal quotation marks and citation omitted) (plaintiff provided inadequate notice when he submitted an emergency room slip stating he was under no restrictions before being absent for three weeks without explanation about his expected return, and plaintiff and his doctor provided incomplete and dishonest responses to employer's request for information).  Accordingly, failure to respond to an employer's request may result in the denial of FMLA protection. 29 C.F.R. § 825.303(b).

Here, viewing the evidence in the light most favorable to Sherif, he told Christophi that he had been very sick with what he thought was malaria and for which he would soon be tested, had received treatment in his village and been referred to a larger clinic, and would be unable to return to the United States until he recovered.  *See* ECF No. 11-2 ¶ 9.  Sherif did more than merely "[c]all[] in sick."  *Rodriguez*, 545 F. Supp. 2d at 518.  However, without knowing whether Sherif actually had malaria[23] or the duration of his absence, UMMC was left almost completely "in the dark" about whether Sherif's absence was FMLA-qualifying.  *See Lewis*, 278 F.3d at 710; *Rodriguez*, 545 F. Supp. 2d at 518 (employee must provide "some level of detail regarding the nature of the illness and the likely duration of

---

[23] The Court assumes for the purpose of this motion that malaria qualifies as a "serious health condition," though neither party has briefed that issue.

the absence such that the employer is able to reasonably conclude that the absence may qualify as FMLA leave").

Further, even had Sherif's oral notice been sufficient to trigger UMMC's duty to seek additional information, there is no dispute that Sherif failed to respond to UMMC's repeated and reasonable requests for information and did not contact UMMC until mid-May 2014. *See* ECF Nos. 4-6 ¶ 9; 4-15; 4-16; 4-17; 4-18; 11-2 ¶ 25. FMLA protection is unavailing when an employee fails to respond to an employer's request for further information. 29 C.F.R. § 825.303(b); *Peeples*, 64 F. App'x at 863. Although Sherif had apparently been unable to contact UMMC because he had lost his cellphone and could not access his email or return to the United States until May, "the employer is not required to be clairvoyant." *Johnson v. Primerica*, 1996 WL 34148, at *5 (S.D.N.Y. 1996). The FMLA does not contemplate the facts presented here: an indication that leave is required to deal with a potentially serious health condition, then roughly six weeks of silence from the employee. In fact, it contemplates the opposite: "[t]he FMLA presupposes that employers and employees will cooperate and exchange information." *Peeples*, 64 F. App'x at 863. Sherif's situation may have been unfortunate, and perhaps beyond his control, but the issue here is whether UMMC has violated the FMLA. Not knowing that Sherif apparently lacked access to all methods of

18

communication or that he had been unable to return to the United States, UMMC waited a month for him to respond to several requests for information before terminating him.  *See* ECF No. 4-21.  "It is well to remember that the FMLA is designed only to protect employees when there is a 'serious health condition,' *and only in a manner that 'accommodates the legitimate interests of employers.'"  *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 981 (5th Cir. 1998) (*quoting* 29 U.S.C. § 2601(a)(4),(b)(3)) (emphasis added).  On the current record, Sherif has not shown that he adequately notified UMMC of his entitlement to FMLA leave; thus, his termination did not violate the FMLA.  *See* 29 C.F.R. § 825.303(b)("Failure to respond to reasonable employer inquiries . . . may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying.").[24]  For that reason, UMMC is entitled to summary judgment on the interference claim.

   2.   Retaliation

   To survive an employer's motion for summary judgment, a plaintiff must show direct evidence of discrimination, or

---

[24] Unlike an employee's obligation to comply with an employer's "usual and customary notice and procedural requirements" or provide certification of the illness, an employee's obligation to respond to an employer's inquiries is not conditioned on the absence of "unusual" or "extenuating" circumstances.  *Compare* 29 C.F.R. § 825.303(b) *with* 29 C.F.R. § 825.303(c) *and* 29 C.F.R. § 825.313(b).  Because the Court has concluded that Sherif's claim fails under § 825.303(b), it need not decide whether it also fails under § 825.303(c) or § 825.313(b).

establish a *prima facie* case that raises an inference of illegal conduct. *See, e.g.*, *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). The burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) applies to retaliation claims lacking direct evidence. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000); *Yashenko*, 446 F.3d at 551. First, the plaintiff must establish a *prima facie* case of retaliation. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). The burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse action. *See id.*

The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by showing "both that the reason was false and that discrimination was the real reason for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (internal quotation marks omitted); *see also Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (at the pretext stage, the plaintiff must show "that retaliation was a but-for cause of a challenged adverse employment action").[25]  "Comparator

---

[25] In *Foster*, the Fourth Circuit held that *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013), had no bearing on the causation element of a *prima face* case of retaliation. 787 F.3d at 251. *Nassar* held that retaliation plaintiffs--unlike discrimination plaintiffs-- must establish but-for causation. 133 S. Ct. at 2533. However,

evidence"--that is, "evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably"--is highly relevant to demonstrating pretext. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)(*citing McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1817).

Sherif alleges that UMMC retaliated against him "when it rejected his reapplication." ECF No. 15 ¶ 37.[26]  To establish a *prima facie* retaliation claim under the FMLA, Sherif must establish: (1) a protected activity; (2) a "materially" adverse employment action; and (3) a causal connection between the protected activity and materially adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405,

---

the plaintiff in *Nassar* had proceeded under the direct method of proving causation, not the indirect burden-shifting *McDonnell Douglas* framework.  *See id*.  The Fourth Circuit concluded that "applying the ultimate causation standard at the prima facie stage[] would be tantamount to eliminating the McDonnell Douglas framework in retaliation cases."  *Foster*, 787 F.3d at 251. Accordingly, it held that because "the *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action[,] *Nassar* does not alter the legal standard for adjudicating a *McDonnell Douglas* retaliation claim."  *Id*. at 252.

[26] Because the evidence shows that UMMC received--and, thus, "accepted" Sherif's application--the Court assumes for the purpose of this motion that Sherif means that UMMC retaliated against him when it refused to rehire him.

165 L.Ed.2d 345 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*,
333 F.3d 536, 543 (4th Cir. 2003); *Yashenko*, 446 F.3d at 551.

An adverse employment action "'adversely affect[s] the
terms, conditions, or benefits of the plaintiff's employment.'"
*Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir.
2007) (*quoting James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d
371, 375 (4th Cir. 2004) (internal quotation marks and citations
omitted)).  A plaintiff "must show that a reasonable employee
would have found the challenged action materially adverse, which
in this context means it well might have dissuaded a reasonable
worker from [engaging in the protected activity]." *Burlington N.
& Santa Fe Ry.*, 548 U.S. at 68 (internal quotation marks and
citations omitted).

A plaintiff's burden for establishing *prima facie* causation
is not onerous.  *Foster*, 787 F.3d at 251.  If the employer takes
the action "shortly after" learning about the protected
activity, courts may infer a causal connection between the two.
*Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004); *King v.
Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (ten week lapse
between protected activity and adverse action sufficient to
infer causality); *Williams v. Cerberonics, Inc.*, 871 F.2d 452,
457 (4th Cir. 1989) (proof that defendant fired plaintiff after
learning about the protected activity "far from conclusively
establishes the requisite causal connection, [but] it certainly

satisfies the less onerous burden of making a prima facie case of causality"). To show a causal connection, a plaintiff must show the defendant knew of a plaintiff's protected activity. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

UMMC argues that Sherif has failed to demonstrate the protected activity and causation[27] elements. ECF No. 4-1 at 24-26. UMMC further contends that it had a legitimate, nonpretextual reason not to rehire Sherif. ECF Nos. 4-1 at 26-27; 14 at 18-19. Sherif contends that he engaged in a protected activity through his telephone calls to Christophi, and UMMC "did not make legitimate attempts to provide FMLA leave . . . sufficient to rebut retaliatory intent." ECF No. 11 at 16-19.[28]

---

[27] UMMC contends that Sherif failed to demonstrate a causal connection between the exercise of FMLA rights and his termination. ECF No. 14 at 16. However, Sherif alleged that UMMC's rejection of his application--not its termination of him--had been retaliatory. *See* ECF No. 15 ¶ 37. Further, UMMC appears to contend that "retaliatory intent" and causation are different elements. *See* ECF No. 14 at 16-17. However, the causal link establishes the retaliatory intent. *See Bosse*, 692 F. Supp. 2d at 588 (noting that a retaliation claim requires retaliatory intent, then analyzing the standard elements).

[28] Sherif has not provided authority for the proposition that he is entitled to "a presumption of retaliatory intent." Rather, Sherif bears the burden of showing that there is a genuine dispute of material fact on each element of his claims.

Sherif further contends that UMMC's reason for his termination[29] was "mere pretext."   ECF No. 11 at 19.

UMMC does not dispute that its rejection of Sherif's reapplication was an adverse employment action.  *See* ECF No. 4-1 at 24; *see also U.S.E.E.O.C. v. Bojangles Restaurants, Inc.*, 284 F. Supp. 2d 320, 330 (M.D.N.C. 2003) (plaintiff sufficiently alleged an adverse employment action when defendant refused to rehire her); *Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F. Supp. 2d 457, 463 (D. Md. 2002)("[F]ailure to rehire . . . may constitute an adverse employment action.").

Additionally, under well-settled Fourth Circuit precedent, the six-week period between Sherif's telephone calls and UMMC's decision not to rehire him establishes *prima facie* causation. *See, e.g.*, *Price*, 380 F.3d at 213.   Further, although Lucken-- who received Sherif's application[30]--had been unaware that Sherif had sought leave, a reasonable jury could infer that Hornbeck had been.   Hornbeck is the Associate Director of the Path Lab where Sherif had worked, and on May 16, 2014, Hornbeck told Sherif "there was 'no point to talk about [his application].'"

---

[29] As noted above, Sherif did not allege, and thus cannot now argue, that his termination was retaliatory.  *See* ECF No. 15 ¶ 37; *supra* note 27.  Sherif's sole allegation under his retaliation claim was that UMMC retaliated against him "when it rejected his reapplication."   ECF No. 15 ¶ 37.

[30] ECF No. 4-9 ¶ 6.

ECF Nos. 4-6 ¶ 2; 11-2 ¶ 32.   Thus, the issue is whether Sherif had engaged in a protected activity.

One judge in the District of Maryland has relied on the first four elements of an interference claim to define "protected activity" for a retaliation claim; that is, a plaintiff must show that "(1) []he was an eligible employee; (2) [his] employer was covered by the statute; (3) []he was entitled to leave under the FMLA; and (4) []he gave [his] employer adequate notice of [his] intention to take leave." *Edusei v. Adventist Healthcare, Inc.*, No. CIV.A. DKC 13-0157, 2014 WL 3345051, at *10 (D. Md. July 7, 2014) (J. Chasanow)(*citing Rodriguez*, 545 F. Supp. 2d at 516).   Similarly, the Seventh and Fifth Circuits have held that a plaintiff did not engage in a protected activity because the plaintiff had provided insufficient notice of the need for FMLA-qualifying leave.   *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012); *Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 913 (5th Cir. 2010).   As discussed above, Sherif has not demonstrated that he provided adequate notice or responded to UMMC's requests about his entitlement to FMLA leave.   *See supra* Section II.B.1.   Under this articulation of "protected activity," Sherif has not established a *prima facie* case.

However, the First Circuit has stated that "[r]equesting leave is also an FMLA-protected right, . . . for which

retaliation conceivably could be wrongful *even where the leave itself was unprotected."  Tayag v. Lahey Clinic Hosp., Inc.*, 632 F.3d 788, 793 (1st Cir. 2011) (*citing* see 29 C.F.R. § 825.220(a)(1))(emphasis added).  The Fourth Circuit has not addressed whether a request for non-FMLA qualifying leave can sustain a retaliation claim.  However, several other circuits have held that only a valid FMLA leave request can form the basis of a retaliation claim.  *See Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) ("To succeed [on a retaliation claim], [the Plaintiff] must of course be entitled to FMLA benefits . . . .");  *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009);  *Davis v. Michigan Bell Tel. Co.*, 543 F.3d 345, 354 (6th Cir. 2008) (plaintiff's retaliation claim fails as a matter of law because she was ineligible for FMLA leave);[31] *cf.* Walker v. Elmore Cnty. Bd. of Educ., 379 F.3d 1249, 1253 (11th Cir. 2004) (request for non-FMLA qualifying leave cannot sustain a retaliation claim, but declining to decide whether a request for FMLA-qualifying leave is a protected activity).

The Court need not decide whether Sherif's telephone calls to Christophi indicating that he needed additional time off were protected because UMMC has proffered a legitimate reason for

---

[31] *See also Hansler v. Lehigh Valley Health Network*, No. 13-CV-03924, 2014 WL 1281132, at *1 (E.D. Pa. Mar. 28, 2014) *rev'd and remanded sub nom. Hansler v. Lehigh Valley Hosp. Network*, No. 14-1772, 2015 WL 3825049 (3d Cir. June 22, 2015)(collecting cases).

declining to rehire Sherif, which Sherif has not shown to be pretextual.  UMMC has produced evidence that it refused to rehire Sherif because he failed to communicate his expected return date or respond to Christophi's emails, and because by the time he reapplied for his job, it had received several qualified applications.  *See* ECF Nos. 4-9 ¶¶ 4-6; 4-19.  "It is well established that discharging an employee who fails to report to work is a valid, nondiscriminatory reason for termination."  *Wallace v. Rite Aid Corp.*, No. CIV. PJM 10-2190, 2012 WL 366896, at *3 (D. Md. Feb. 1, 2012); *see also Peeples*, 64 F. App'x at 864.

To survive summary judgment, Sherif must rebut that evidence by showing that the proffered reason is, more likely than not, a pretext for discrimination.  *See Holland,* 487 F.3d at 214-15 (*quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (internal quotations omitted)).  He can do this "by showing that the employer's proffered explanation is unworthy of credence." *Id.* (*quoting Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981) (internal quotations omitted)).  Sherif contends that "[UMMC's] failure to follow its own internal policies, to adhere to deadlines provided for in its communications to [him], to sufficiently request certification [of his illness] and provide an

27

opportunity for [him] to respond" establish pretext.  ECF No. 11 at 19.

The record evidence shows that UMMC tried to accommodate Sherif's need for time off; on several occasions it sent him emails to inquire about his status and called his emergency contact telephone number, and it mailed FMLA paperwork to the only address he had provided.[32]  ECF Nos. 4-7 ¶ 6; 4-8 ¶ 6; 4-15; 4-16; 4-17; 4-18; *see Brookins v. Staples Contract & Commercial, Inc.*, No. CIV.A. 11-11067-RWZ, 2013 WL 500874, at *7 (D. Mass. Feb. 12, 2013) (employer's "obvious willingness to provide [employee] with FMLA leave is hard to reconcile with the asserted retaliation").  Further, the April 15, 2014 letter required Sherif to respond by April 25, 2014; his failure to communicate by that day "[would] be considered [his] resignation."  ECF No. 4-19.  It did not, as Sherif contends, provide him with 10 days to respond from the date of receipt. ECF No. 11 at 17.  UMMC's unrebutted evidence shows that UMMC

---

[32] Sherif contends that there is merely a rebuttable presumption that UMMC mailed him the FMLA paperwork, and that because UMMC "knew that [he] was in Ethiopia," the telephone calls do not "rebut retaliatory intent."  ECF No. 11 at 18.  That Sherif may not have received the FMLA paperwork does not mean that UMMC did not send it to him in an attempt to accommodate his request; UMMC has provided sufficient evidence that it mailed the paperwork.  *See* ECF Nos. 14-1 ¶ 3 (sworn declaration that the paperwork had been mailed); 4-7 ¶ 6 (same); 14-2 (the FMLA paperwork addressed to Sherif).  Further, UMMC had no information about Sherif's expected return date; thus, absent communication from Sherif, it had no way of knowing where he was.

terminated Sherif because it had not heard from him in over a month, and had no way of knowing why Sherif had not been in contact.  Before he returned, UMMC had advertised his position and, in the first week, received several qualified applications, one of whom accepted the position; thus, Lucken saw no need to forward Sherif's application to Hornbeck.  ECF No. 4-9 ¶¶ 3-7.

Sherif has not presented any evidence that UMMC's reasons for not rehiring him were false, or that similarly situated employees were treated any better.  *See Jiminez*, 57 F.3d at 378; *Laing*, 703 F.3d at 719.  A jury could not reasonably infer that UMMC's reasons for refusing to rehire Sherif were mere pretext, or that UMMC refused to rehire him *because of* his telephone calls indicating that he needed more time off.  *See Foster*, 787 F.3d at 252.  UMMC is entitled to summary judgment on the retaliation claim.

III. Conclusion

For the reasons stated above, UMMC's motion for summary judgment will be granted.[33]

_____8/26/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[33] UMMC seeks an award of costs and attorneys' fees.  ECF No. 4 at 2.  UMMC will be given 30 days from the date the accompanying Order is entered to provide legal and factual support for its request.  If UMMC does not comply within that time, the Court will close this case.

29